IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-00814-PAB-SBP

JAMIE LEE SAUNDERS,

Plaintiff,

v.

ALBERTSONS/SAFEWAY, LLC, and
UNITED FOOD AND COMMERCIAL
WORKS UNION, LOCAL 7, et al.,

Defendants.

---

**ORDER**

---

This matter comes before the Court on Defendant Safeway's Motion for Summary Judgment [Docket No. 94] and Defendant UFCW Local 7's Motion for Summary Judgment [Docket No. 93]. The Court has jurisdiction over Ms. Saunders' federal claims pursuant to 28 U.S.C. § 1331 and over her state law claim pursuant to 28 U.S.C. §1367. Because the movants have shown that there is no genuine dispute as to any material fact preventing the entry of judgment as a matter of law, as to any of Ms. Saunders' claims, the Court grants both motions.

This is an employment discrimination case. Plaintiff Jamie Lee Saunders worked as a meat cutter at a Safeway store in Montrose, Colorado.

## I. UNDISPUTED FACTS

As a threshold matter, the Court notes that Ms. Saunders frequently does not cite evidence that contradicts the facts she purports to dispute and frequently does not properly support her own fact assertions with citations to material in the record. For

example, she denies many facts asserted by defendants, but does so without citing any supporting evidence, such as a declaration from her. This contravenes Fed. R. Civ. P. 56, which states that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, . . . affidavits, or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). To implement this requirement, the Court requires that "[a]ny denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial." *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.iv.

By failing to adhere to the Court's Practice Standards, Ms. Saunders fails to properly address defendants' assertion of fact as required by Rule 56(c). *See* Fed. R. Civ. P. 56(e). Regarding facts that Ms. Saunders has failed to properly deny, the Court is permitted to "consider the fact[s] undisputed for purposes of the motion." *See* Fed. R. Civ. P. 56(e)(2). A pro se litigant is not excused from complying with the Court's Practice Standards and the Federal Rules of Civil Procedure. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("[T]his court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.") (alteration and citation omitted); *Toevs v. Milyard*, 563 F. App'x 640, 643 (10th Cir. 2014) (unpublished) ("[i]n response to a properly supported summary judgment motion, the nonmovant must present specific facts *by affidavit or other evidence* that demonstrate a genuine dispute of material fact") (citing Fed. R. Civ. P. 56(c)(1)(A) (emphasis added)).

In light of Ms. Saunders' failure to cite to evidence to support most of her factual contentions, whether in response to defendants' facts or in support of her own, the Court will not consider such evidence either to establish an undisputed fact or to raise a dispute of material fact. As the Court's Practice Standard on summary judgment states, "[f]ailure to follow these procedures may result in an order striking or denying the motion or brief or may cause the court to deem certain facts as admitted." Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.ix.

The Court finds that the following facts are undisputed unless otherwise noted:

**A. Ms. Saunders' Employment at the Montrose Safeway Store**

On May 31, 2021, Safeway hired Ms. Saunders as a meat cutter in its grocery store in Montrose, Colorado. Docket No. 94 at 1, 3, ¶ 1. At the time she was hired, Ms. Saunders had almost twenty years of meat-cutting experience. *Id.* at 3, ¶ 3. She was a member of the United Food and Commercial Workers Union (the "Union") and was subject to a collective bargaining agreement between Safeway and the Union. *Id.*, ¶ 4; Docket No. 94-5 (Montrose Clerks and Meat Agreement Between Safeway Inc. and United Food and Commercial Workers, Local 7, Denver, Colorado, Term: February 27, 2022 through and including February 22, 2025) ("CBA"); *see also* Docket No. 93-1 (CBA).[1] Under the CBA, seniority is defined as "length of continuous employment" with Safeway, Docket No. 94 at 3, ¶ 5; Docket No. 94-5 at 4, Art. 30, § 71, and an employee's preferred schedule of daily shifts is subject to seniority within each job classification and department. Docket No. 94 at 3, ¶ 6; Docket No. 94-5 at 6, Art. 32,

[1] To the extent the summary judgment motions present duplicative undisputed facts and supporting documentation, this order will refer to one version for simplicity.

§ 95 ("The Employer will recognize seniority for the more preferred schedule of daily shifts, including days off within each job classification and department.").

By 2023, the only meat cutter with less seniority than Ms. Saunders at the Montrose Store was Francis Escobar, whose seniority date with Safeway was September 7, 2021. Docket No. 94 at 4, ¶ 8. Mr. Escobar came to Safeway with no meat-cutting experience. *Id.*, ¶ 11. By contrast, Ms. Saunders was a "journeyman" meat cutter and could cut more meat than Mr. Escobar in the same time period because of her efficiency and speed. *Id.,* ¶ 12. Michael Ruchhoeft, the meat department manager, expected Ms. Saunders to perform at higher level of productivity. *Id.*

Ms. Saunders' hourly wage in 2023 was $22.51. *Id.*, ¶ 14. This wage was set by the CBA and was the highest hourly rate available for a meat cutter. *Id.* When Ms. Saunders took the job in May 2021, Larry Murphy held the position of "First Cutter" in the meat department at the Montrose Safeway store. *Id.* at 5, ¶ 15. Following Mr. Murphy's retirement, Ms. Saunders and employee Tim Moore—who, as Ms. Saunders admits, had more seniority than she did—applied for the "Lead Meat Cutter" position in March 2023. *Id.*, ¶¶ 17-18. After the interviews, Kelly Davis, the grocery store manager, learned that there was no "Lead Meat Cutter" job classification in the CBA and that he had erred in posting the position. *Id.*, ¶ 19. Mr. Davis informed Ms. Saunders and Mr. Moore that neither of them would be hired for the position because there was no such position.[2] *Id.*

---

[2] There is no properly-supported evidence in the record indicating that anyone was hired for that non-existent job during Ms. Saunders' tenure at the store. However, in light of Mr. Moore's undisputedly greater seniority than Ms. Saunders, Mr. Moore would have been awarded the job, had there been one. Docket No. 94 at 5, ¶ 17; Docket No. 94-5 at 5, CBA, Art. 30 (Seniority), § 78 (under the CBA, Safeway "shall offer the

**B. Ms. Saunders' First Hostile Work Environment Grievance**

In January 2023, Ms. Saunders met with Mr. Davis, Mr. Ruchhoeft, and Elisha Curtis, a Union representative, to request more support for on-the-job training for co-workers she believed lacked the training to properly clean the equipment in the meat department. *Id.*, ¶ 20.

During that meeting, Mr. Ruchhoeft spoke with Ms. Saunders about her belittling and criticizing her co-workers. *Id.* at 6, ¶ 21. Mr. Ruchhoeft had personally observed Ms. Saunders mocking a male co-worker who had a high-pitched speaking voice by talking to him in what Mr. Ruchhoeft characterized as a "falsetto" voice. *Id.* After the falsetto-voice incident, which Ms. Saunders does not dispute occurred, Docket No. 105 at 2, ¶ 21, a number of Ms. Saunders' co-workers complained to Mr. Ruchhoeft that they had observed, or experienced themselves, Ms. Saunders' ridicule of fellow employees and that she had a combative and belligerent attitude. Docket No. 94 at 6, ¶ 21. Mr. Ruchhoeft personally heard Ms. Saunders telling other employees that "[y]ou've got no right to call yourself a meat cutter" and "[t]hat looks like s**t." *Id*. Employee Refugio Medrano transferred out of the meat department because of Ms. Saunders' conduct. *Id.*

After Mr. Ruchhoeft observed the falsetto-voice incident, he told Ms. Saunders that she could not treat people that way and that her actions were creating a hostile work environment in the meat department. *Id.*, ¶ 22.[3] Soon after that, on March 1,

---

promotion/lateral transfer/full-time to the senior qualified employee within the store prior to hiring off-the-street").

[3] Ms. Saunders asserts, without supporting evidence, that Mr. Ruchhoeft "never *explained* to [her] that she was creating a hostile work environment," Docket No. 105 at 2, ¶ 22 (emphasis added), but this is insufficient to raise a genuine dispute that Ms. Saunders engaged in the referenced conduct.

2023, Ms. Saunders filed a grievance complaining that she was the victim of a "hostile work environment." *Id.*, ¶ 23; Docket No. 94-9 (Grievance Report Form stating that "Ms. Saunders is experiencing a hostile work condition in the workplace" that commenced on February 28, 2023). Ms. Saunders' allegations were investigated by Katina Wood, a Safeway Senior Human Resources Manager. Docket No. 94 at 6, ¶ 24. As part of her investigation, Ms. Wood obtained written statements from six employees in the meat department at the Montrose Safeway store. *Id.*

One employee wrote[4] that "employees have come to me and complain[ed] that [Ms. Saunders] is mean, rude, and sometimes difficult to work with. . . . I have also had customers tell me that [Ms. Saunders] has been very rude to them when they come to the butcher block counter, as if she is upset that they have interrupted her." Docket No. 94-10 at 7-8. Another said that Ms. Saunders "can be very hostile and antagonizing when correcting/coaching team members. This makes all of us not want to even ask her for help because we don't know how will she respond/act." *Id.* at 10. One individual, who worked as a meat clerk, said that "we've had a productive, cohesive team up until the past year. I've observed a decline in productivity and morale. One person"—there is no dispute the employee is referring to Ms. Saunders—"has degraded and demeaned certain coworkers. At least four people have left the meat department in the past year to remove themselves from a hostile work environment." *Id.* at 18-19. The employee said that Ms. Saunders had created "an environment of intimidation and lack of respect shown to specific coworkers," and that since her arrival, "[t]here is

[4] Non-substantive alterations to the language in spelling and punctuation have been made to enhance readability of the employee statements.

interference with coworkers to perform their duties and disrupt a shift at any given time." *Id.* at 19.

Mr. Moore, the other meat cutter who applied for the mistakenly-posted "Lead Meat Cutter" position, wrote in his statement that Ms. Saunders "has been extremely critical of and to the new people. She has been almost obsessively focused on Francis [Escobar]. Now all she does when she comes to work is complain, which makes the whole department on edge." *Id.* at 12. Mr. Escobar wrote the following in his statement:

> I've worked in the Meat Department for almost 2 years from day one it was a hostile environment working with Jamie. It would stress me out when I had to work with her. . . . She ran off five workers and if it wasn't her way it was wrong . . . . When she's not there we thrive. She is more worried about what we are doing not focusing on what she is doing. I'm at the point where I want to transfer but I love the meat department. I think she needs mental health.

*Id.* at 14. And Mr. Ruchhoeft, the meat department manager, said in his statement that "Jamie's behavior has been a problem for some time; she has ridiculed, mocked, and berated her coworkers to the point that some of them have transferred out of the depart[ment]. . . . [W]hen Jamie is on shift the mood is most often tense. When she is off, everyone gets along fine." *Id.* at 16.

On March 30, 2023, Ms. Wood, Ms. Saunders, and Sharron Counas, Ms. Saunders' Union steward, participated in a "Step 2" meeting to discuss Ms. Saunders' grievance. Docket No. 94 at 7, ¶ 25. During the meeting, Ms. Saunders asked for training about how to remove and discard spoiled food because she was concerned that "out-of-code" product was being put out for sale in the meat department, and she wanted access to production logs and inventory and ordering documents—presumably to confirm that point. *Id.*, ¶ 27. Ms. Wood instructed Ms. Saunders to notify her directly

when she saw out-of-code meat on the shelves. *Id.* at 9, ¶ 35. Ms. Saunders asserts that she contacted "store management" to report that "out-of-code meat . . . was put out for sale on the floor," but she never notified Ms. Wood of these alleged violations. *Id.*, ¶ 36. Nor did she contact any government food safety agency—including the Food and Drug Administration or the U.S. Department of Agriculture—to report the alleged sale of spoiled meat at the Montrose Safeway. *Id.*, ¶ 37; Docket No. 94-1 at 50-51, 131:9-16, 132:10-18.

Also, during the March 30, 2023 Step 2 meeting, Ms. Saunders told Ms. Wood about arguments she had with co-workers in the meat department that Ms. Saunders claimed were intimidating and bullying. Docket No. 94 at 7, ¶ 28. There is evidence in the record concerning only one such incident by that date, in which Mr. Escobar yelled at Ms. Saunders and called her "the B word twice." *Id.* at 8, ¶ 29. Mr. Davis, the store manager, observed this encounter. *Id*. Mr. Escobar was coached about his behavior after the incident. *Id*., ¶ 30.

At the end of her investigation, Ms. Wood found that Ms. Saunders' claim of hostile work environment could not be substantiated. Instead, it appeared that Ms. Saunders and her co-workers had frequent personality conflicts. *Id*., ¶ 31; Docket No. 94-10 at 2-3, 9. Ms. Saunders' grievance was resolved by means of a settlement between Safeway and the Union in which it was agreed that Mr. Davis and Mr. Ruchhoeft would have a department meeting about Safeway's Courtesy, Dignity and Respect policy and "working as a team"; that Mr. Ruchhoeft would provide Ms. Saunders some "limited training on skills she might need to apply to future management positions"; and Mr. Ruchhoeft would provide "duty lists," as practical, to employees who

worked later shifts to outline daily expectations for them. Docket No. 94 at 8, ¶ 32; Docket No. 94-12 (Full Release and Settlement Agreement signed by Safeway on March 30, 2023, and Ms. Counas, the Union representative, on March 31, 2023). Ms. Saunders testified that she did not receive the training referenced in the Settlement Agreement, but she never brought that omission to Ms. Wood's attention. Docket No. 94 at 8, ¶ 33; Docket No. 94-1 at 48, 129:10-17.

In early May 2023, about a month after the settlement of Ms. Saunders' hostile work environment grievance, there was a second incident involving Ms. Saunders and Mr. Escobar. Ms. Saunders noticed out-of-date meat in a cooler, Docket No. 94 at 9, ¶ 38, but instead of discarding it, she left it in the cooler with its original out-of-date labels on it. *Id.* Later, during the same shift, Ms. Saunders saw Mr. Escobar grinding this old meat, but she did not intervene to stop him because, according to her, she had told by Mr. Ruchhoeft not to speak with Mr. Escobar. *Id.*, ¶ 40. When Mr. Escobar learned he had ground meat that could not be sold, and that he would have to spend significant time cleaning and sanitizing the grinder, he yelled at Ms. Saunders: "[y]ou did this on purpose. You let me grind this burger." *Id.*, ¶ 41. Mr. Escobar then slammed a meat cart to the floor. *Id.* Mr. Escobar was verbally reprimanded for his actions. *Id*. at 9-10, ¶ 42.

### C. Transfer to Another Department, Failure to Report for Work, and Termination

The second Saunders/Escobar incident prompted Mr. Davis to call another meeting with Ms. Saunders and Ms. Counas, her Union representative, Ms. Wood, and Chris Sherwood, an assistant store director, to try to get things resolved in the meat department. *Id*. at 10, ¶ 43; Docket No. 94-1 at 56, 144:3-25. At that meeting, Ms.

Wood suggested that, "if the issues within the department were not resolved (i.e. Ms. Saunders' coworkers could not get along with her), that Ms. Saunders might be transferred." Docket No. 94 at 10, ¶ 44; Docket No. 94-1 at 19, 57:13-24. At some point after that, perhaps in early August, Mr. Davis, Mr. Sherwood, and Mr. Ruchhoeft discussed transferring Ms. Saunders to a new department because no one in the meat department wanted to work with her. Docket No. 94 at 10, ¶ 45.

Mr. Ruchhoeft did not place Ms. Saunders on the work schedule for the week of August 7, 2023. *Id.*, ¶ 46. On August 6, 2023, when Ms. Saunders realized that her name was not on the work schedule, she and Will Phillips, who was by then her Union representative,[5] initiated a "Step 1" grievance meeting to discuss Ms. Saunders' apparent removal from the schedule. *Id.*, ¶ 47. A meeting on August 7 ended with an agreement to meet again on August 8, and shortly after the August 8 meeting, while Ms. Saunders and Mr. Phillips were still in the parking lot, Ms. Saunders asked Mr. Phillips to return to the store to obtain unemployment compensation paperwork for her. Docket No. 93 at 4, ¶ 19. When he returned, Mr. Phillips informed Ms. Saunders of a settlement proposal from store management, *id.* at 5, ¶ 20, in which Safeway agreed to allow Ms. Saunders to transfer to any other department in the Montrose store while retaining her rate of pay. *Id.*, ¶ 21; Docket No. 93-2 at 8, 169:23-170:11 (Saunders' testimony that Safeway offered to move her from the meat department to "any position at [her] current rate for any schedule").

[5] Mr. Phillips began working as the Union representative for Montrose Safeway employees, including Ms. Saunders, beginning in June 2023. Docket No. 93 at 3, ¶ 10.

That evening, Ms. Saunders texted Mr. Phillips:

> Hello sir! How about Floral . . . start time 8 or 9 . . 3 days in a row a week that at least 20 hrs.

Docket No. 93 at 5, ¶ 24; Docket No. 94-14 at 1 (text sent August 8 at 7:16 p.m.). Mr. Phillips communicated the offer to Safeway management, and Safeway agreed to the terms. Docket No. 93 at 5, ¶ 26; Docket No. 93-4 at 3, 91:14-92:7. The next day, August 9, 2023, Mr. Phillips texted Ms. Saunders to advise that he had secured her placement in the floral department "3 days a week in a row, starting 8/15," Docket No. 93 at 6, ¶ 27, prompting Ms. Saunders to respond with several GIFs indicating approval and containing captions of "Frickin' Awesome", "You're hired", and "You're awesome." *Id.*, ¶ 28; Docket No. 94-14 at 2-3.

Five days later, Ms. Saunders had a change of heart. On August 14, 2023, the day before her scheduled start date in the floral department, Ms. Saunders told Mr. Phillips she changed her mind. Docket No. 94 at 11, ¶ 51; Docket No. 94-14 at 4-5. Mr. Phillips responded that she had accepted the offer that he had verified with her by phone. Docket No. 94 at 11, ¶ 51; Docket No. 94-14 at 5. In response, Ms. Saunders said that "I conced [sic] that I verbally agreed to a different position in a different department at my current 'rate.'" Docket No. 93 at 6, ¶ 32; Docket No. 93-8 at 2.

Ms. Saunders did not report for work a single day in the floral department, although she presented a doctor's excuse for two of her scheduled shifts. Docket No. 94 at 11, ¶ 53. On September 26, 2023, because Ms. Saunders refused to work for six weeks, Safeway terminated Ms. Saunders' employment. *Id.*, ¶ 55.

### D. Ms. Saunders' Subsequent Hostile Work Environment and Termination Grievances

On August 25, 2023, "[o]ut of an abundance of caution," Mr. Phillips filed a second hostile work environment grievance on Ms. Saunders' behalf "relating to the events leading up to [her] removal from the meat department." Docket No. 93 at 6, ¶ 34; Docket No. 93-10 (August 25, 2023 grievance stating that "Ms. Saunders is experience[ing] a hostile working environment.").

On October 4, 2023, the Union filed a grievance related to Ms. Saunders' termination. Docket No. 93 at 7, ¶ 39. The grievance was processed through Step II, as outlined in the CBA, but was ultimately dropped by Local 7's Executive Grievance Committee, citing the unlikelihood of success at arbitration. *Id.*, ¶ 40. The August 2023 hostile work environment grievance was also processed through Step II and was also dropped by the Executive Grievance Committee, citing the unlikelihood of success at arbitration. *Id.*, ¶ 41. The Union notified Ms. Saunders by letter dated October 31, 2023 that her pending grievances were dropped and gave her instructions and forms for each grievance if she wanted to appeal to the Union Executive Board. *Id.* at 8, ¶ 44. The instructions indicated that the forms had to be returned to the Denver office within 15 days per Local 7's Bylaws. *Id.*, ¶ 45.

Ms. Saunders did not return the appeal forms within the 15-day allotted timeframe, and she did not send an appeal to the Denver Union office. *Id.*, ¶ 49.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotation omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. ANALYSIS

### A. Safeway's Motion

Ms. Saunders brings five claims against Safeway: a claim under Title VII, 42 U.S.C. § 2000e-2(a), alleging disparate treatment on the basis of her sex, Docket No. 1 at 19-20, ¶¶ 103-11 (Claim Two); a claim under the Equal Pay Act of 1963, 29 U.S.C. § 206(d), *id.* at 20-21, ¶¶ 112-118 (Claim Three); a claim under Title VII asserting that she was subjected to a hostile work environment, *id*. at 21-22, ¶¶ 119-126 (Claim Four); a claim under § 301 of the Labor Management Relations Act ("LMRA") asserting that Safeway's terminating her employment violated the CBA, *id*. at 22-23, ¶¶ 127-138 (Claim Five); and a claim alleging that her termination violated public policy in contravention of Colorado law, *id*. at 23-25, ¶¶ 139-149 (Claim Six). Safeway moves for summary judgment on all claims. Docket No. 94 at 1.

#### 1. Title VII Claims

##### a. Disparate Treatment (Claim 1)

Ms. Saunders alleges that she was treated in a disparate manner in the following ways: (1) she was subjected to "pay discrimination," Docket No. 105 at 12-13; (2) she was not selected for the "Lead Meat Cutter" position based on a "manipulation of job titles," *id*. at 13; (3) Safeway's "seniority system was inconsistently applied," resulting in her receiving "unfavorable work shifts" in comparison with her male counterparts, *id.* at 14; and (4) she was required to satisfy higher "production expectations" than the men who worked in the meat department, *id.*; *see also* Docket No. 1 at 19-20, ¶¶ 103-111.

### i. Legal principles

Under Title VII, it is unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(a)(1)). On summary judgment, absent any direct evidence of discrimination—and, here, there is none—courts analyze a plaintiff's discrimination claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Tabor v. Hilti, Inc.*, 703 F. 1206, 1216 (10th Cir. 2013). "Under this framework, the plaintiff must first prove a prima facie case of discrimination." *Payan v. United Parcel Serv.*, 905 F.3d 1162, 1168 (10th Cir. 2018) (internal quotation marks and quotation omitted). "Then, the defendant may come forward with a legitimate, non-discriminatory or non-retaliatory rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir. 2011).

"At the first step of the familiar three-step [*McDonnell Douglas*] inquiry, the plaintiff bears the initial burden of establishing a prima facie case by producing enough evidence to support an inference of discriminatory motive." *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308 (2025) (internal quotations omitted). The plaintiff must also show that the inferred discriminatory motive is reasonably connected to a resultant adverse employment action, which is defined as "some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 601 U.S. 346, 355

(2024); *see also Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021) (to establish a *prima facie* case of disparate treatment, a plaintiff must show that (1) she "belongs to a protected class"; (2) she suffered an "adverse employment action"; and (3) the adverse employment action occurred under circumstances giving "rise to an inference of discrimination"). A plaintiff's burden at the *prima facie* stage is "not onerous." *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1267 (10th Cir. 2015) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

**ii. Application**

It is undisputed that Ms. Saunders is a member of a protected class and that she challenges employment decisions that satisfy *Muldrow's* "some harm" requirement for an adverse employment action. *See Muldrow,* 601 U.S. at 355 (confirming that an adverse action no longer requires a showing that the harm sustained by the employee was "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar"). Nevertheless, Ms. Saunders has failed to meet even her low *prima facie* burden to present competent evidence showing that any of the challenged actions occurred under circumstances giving rise to an inference of discrimination.

***Pay discrimination***. The undisputed record evidence shows that, at $22.51 per hour, Ms. Saunders was paid the maximum rate available for her job classification, as set by the CBA. Docket No. 94 at 4, ¶ 14. She affirmatively admits these facts, Docket No. 105 at 2, ¶ 14, and her response to Safeway's Motion utilizes the words "pay discrimination" only in connection with enunciating the legal standards for a *prima facie* case. *See id.* at 12. To the extent that Ms. Saunders implies that Mr. Moore may have

been compensated at a higher rate, *see id.* at 18 (discussing Moore in connection with the Equal Pay Act claim), she points to no evidence to support that proposition, which remains a matter of speculation on her part. The record contains no evidence that Ms. Saunders was paid less than Mr. Moore or any other meat cutter in the meat department at the Montrose store. *See Lewis v. D.R. Horton, Inc.*, 375 F. App'x 818, 825 (10th Cir. 2010) (unpublished) ("In a Title VII pay discrimination claim, 'a prima facie showing of discrimination consists of evidence that a female employee occupies a job similar to that of higher paid males.'" (quoting *Mickelson v. New York Life Inc. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006))). Ms. Saunders' disparate treatment claim fails the *prima facie* test on her pay-discrimination theory.

***Non-selection for "Lead Meat Cutter."*** Ms. Saunders points to no evidence to support her assertion that she was "denied" this position. Docket No. 105 at 13. Her contentions that the interview process was a sham and that her male counterpart, Mr. Moore, was surreptitiously "awarded" the position by a "manipulation of job titles," *see id.*, find no evidentiary support in the record.[6]

Ms. Saunders has failed to raise any genuine issue of material fact connecting Ms. Saunders' sex and her non-selection for a position which the undisputed evidence

[6] Ms. Saunders has submitted, and the Court has reviewed, an audiorecording of a May 30, 2023 meeting, *see* Docket No. 116-4, between Ms. Saunders, Ms. Curtis (a Union representative), Mr. Davis, and Mr. Ruchhoeft. Ms. Saunders asks about the interview for the "Lead Meat Cutter" position. Ms. Curtis responds by explaining at some length how Montrose store officials came to understand that such a position existed only in the Union's "Denver District," and that the "Intermountain District" (presumably, where the Montrose Safeway is located) did not have that position. A male (apparently Mr. Davis) then explains that they had "interviewed for nothing" and "that was my fault." Brief laughter is audible, which Ms. Saunders attributes to Mr. Ruchhoeft. Ms. Saunders asks the Court to ascribe discriminatory intent to the laughter, Docket No. 105 at 7, ¶ 14, which there is insufficient evidence to do.

shows did not exist.[7]

***"Unfavorable" work shifts***. Ms. Saunders' assertion that she received "unfavorable work shifts" in comparison with her male counterparts, *id*. at 14, similarly finds no record support. The scheduling of shifts under the CBA is based on an employee's seniority, Docket No. 94 at 3, ¶ 6; Docket No. 94-5 at 6, Art. 32, § 95, and Ms. Saunders points to no evidence showing that this rule was violated in her case. While she claims to have "receiv[ed] unfavorable work shifts while male employees were given preferential treatment," Docket No. 105 at 14, it is undisputed that the only meat cutter with less seniority than Ms. Saunders was Mr. Escobar, whose seniority date with Safeway was September 7, 2021, Docket No. 94 at 4, ¶ 8, in comparison with Ms. Saunders' start date of May 31, 2021. *Id.* at 3, ¶ 1. Ms. Saunders has come forward with no evidence to show that Mr. Escobar was allowed to work shifts that she deemed to be "preferential" in some manner.

In her response to Safeway's motion, Ms. Saunders mentions a person named "Randy" who allegedly received "preferential shifts" over her, Docket No. 105 at 6, ¶ 4, but she submits no evidence concerning Randy's seniority in comparison with hers. If Randy had more seniority than Ms. Saunders, he would have been entitled to choose shifts over her. Docket No. 94 at 3-4, ¶¶ 5-7. Ms. Saunders also fails to cite evidence

---

[7] Even if there had been such a position, and Mr. Moore had been chosen for it—assumptions for which there is no record support—no inference of sex-based discrimination could be drawn from those events. Mr. Moore had greater seniority than Ms. Saunders, which would have mandated his selection over her pursuant to the terms of the CBA. *See* Docket No. 18 at 5, ¶ 17; Docket No. 94-5 at 5; *see also Groff v. DeJoy*, 660 U.S. 447, 462 (2023) (stating that Title VII does not require depriving senior employees of their rights under an agreed seniority system).

explaining in what manner the shifts Randy received were “preferential” from her point of view. She presents no evidence identifying a specific shift she wanted to work, but did not receive, because a less senior male employee was selected to work that shift. She thus has failed to meet her *prima facie* burden on the preferential-shift theory.

***Higher production expectations***. Ms. Saunders has presented no evidence showing that she was subject to discrimination because of her sex insofar as she was compelled to meet “production expectations” beyond those required of Mr. Escobar, the less-senior male employee she specifically identifies. Mr. Ruchhoeft testified that he did expected Ms. Saunders—with twenty years of meat-cutting experience behind her—to be able to cut more meat during a shift than Mr. Escobar. *Id*. at 4, ¶ 12. No inference of sex discrimination arises from an employer’s expectation based on an employee’s greater experience and higher level of skill.

***Removal from the meat department and termination***. Ms. Saunders does not specifically state that she bases her disparate treatment claim on her removal from the meat department in August 2023 or her termination at the end of September 2023. Docket No. 105 at 12-13 (no mention of the August 2023 transfer or September 2023 termination under the heading “Sex Discrimination”). Regardless, given Ms. Saunders’ pro se status, the Court assumes she intends to include these events as factual premises for her Title VII disparate treatment claim. However, even this liberal construction of the claim does not reveal the existence of a genuine dispute of material fact.

Ms. Saunders has adduced no evidence raising a reasonable inference that Safeway removed her from the meat department or terminated her employment on the

basis of her sex. Rather, as she admits, the record contains a plethora of undisputed evidence concerning her behavior toward her co-workers in advance of these events. When human resources personnel investigated Ms. Saunders' allegation of a hostile work environment, her co-workers submitted written statements explaining the decline of the work environment in the meat department attendant on Ms. Saunders' presence. They described her "hostile and antagonizing" behavior toward other team members, prompting those individuals to refrain from interacting with her; her "ridicul[ing], mock[ing], and berat[ing]" her co-workers, engendering a mood that was "most often tense"; her "degrad[ing] and demean[ing]" her co-workers to the point that at least four of them left their positions in the meat department; and her "obsessive[] focus[]" on Mr. Escobar, who wrote his own statement explaining that "from day one it was a hostile environment working with Jamie," stressing him to "the point where I want to transfer." *See* Docket No. 94 at 6-7, ¶ 24.

Ms. Saunders does not dispute that she interacted with her co-workers in this manner and made the statements they attribute to her.[8] And she does she dispute that she was a no-show for her assigned work in the floral department for six weeks (with the exception of two shifts for which she may have had a doctor's note) before she was finally terminated.

[8] In so finding, the Court makes no credibility determination. *See Sharpe-Miller v. Walmart, Inc.*, 181 F.4th 1037, 1048 (10th Cir. 2026) ("It is axiomatic that a judge may not evaluate the credibility of witnesses in deciding a motion for summary judgment.") (quotation omitted). Rather, the Court finds that it is undisputed that Ms. Saunders' co-workers made these statements and that Safeway knew of this information at the time of her removal from the meat department and her termination—points that Ms. Saunders does not dispute.

In the face of this record, Ms. Saunders has produced no evidence that raises a reasonable inference that Safeway removed her from the meat department and, ultimately, terminated her employment, because of her sex. Any speculation to that effect, or mere conclusory statements averring that is what occurred, are insufficient to overcome summary judgment. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient). Yet, speculation and unadorned conclusions are all that Ms. Saunders has presented.

In her response to Safeway's Motion, Ms. Saunders broadly asserts that she "experienced a series of incidents indicative of gender bias," Docket No. 105 at 14, but, in fact, no such incident—backed by competent evidentiary support—can be discerned from the record. As detailed above, Ms. Saunders' assertions regarding "pay discrimination," non-selection for the phantom "Lead Meat Cutter" position, "unfavorable work shifts," and being required to meet higher "production expectations" than a meat cutter with one-tenth her years of experience evince no discriminatory animus causally connected to her sex.

Ms. Saunders does point to "derogatory gendered slurs," *see id.*, which the Court understands as a reference to Mr. Escobar twice calling Ms. Saunders a "bitch" after he perceived that she had left work for him to do. Docket No. 94 at 8, ¶ 29. But there is no dispute that Mr. Escobar was counseled for his conduct. *Id.*, ¶ 30. There is also no evidence showing that Mr. Escobar, as a co-worker of Ms. Saunders, played any role in Safeway's decision to remove her from the meat department or to terminate her

employment after she refused to come to work in the floral department. *Cf. Ihenacho v. South Carolina Dep't of Educ.*, No. 3:19-cv-2698-SAL, 2021 WL 1186589, at *3 (D.S.C. Mar. 30, 2021) (concluding that evidence was insufficient to survive summary judgment that included "coworker statements about Plaintiff's accent or ability to communicate," which had "no connection to the Defendant's decision to terminate Plaintiff"); *Shaw v. McDonald*, 715 F. App'x 60, 61-62 (2d Cir. 2018) (unpublished) (dismissing Title VII disparate treatment claim where "co-workers made statements that a reasonable fact-finder could view as discriminatory," but the plaintiff "failed to allege that these co-workers played any role in the VA's decision to fire him or that their remarks were made near the time that he was fired").

Because Ms. Saunders' discrimination claim fails at the *prima facie* case level, the Court need not consider the second and third prongs of the *McDonnell Douglas* analysis: whether Safeway has articulated legitimate, nondiscriminatory reasons for her removal from the meat department and her termination and, if so, whether its stated reasons for these actions were pretextual. However, because Safeway addresses these prongs, *see* Docket No. 94 at 15-16; Docket No. 122 at 5-6, and in the interest of providing a complete analysis of Ms. Saunders' arguments, the Court will do so as well.

Safeway has presented unrebutted evidence showing that Ms. Saunders' conduct toward her co-workers created a working environment that hampered the operation of the meat department. The undisputed evidence shows that Ms. Saunders' behavior had pushed multiple employees out of the Department, Docket No. 94 at 6-7, ¶ 24, and that Safeway could not continue to employ a person who was absent from work for six weeks. *Id.* at 11, ¶ 55; Docket No. 93-12 at 1. These undisputed facts meet

Safeway's burden at the second step of the *McDonnell Douglas* analysis, which "only requires the defendant to articulate a reason for [its action] that is not, on its face, prohibited and that is reasonably specific and clear." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (citation modified). Safeway has provided undisputed evidence demonstrating "legally sufficient explanation[s]" for its actions. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (internal quotation marks omitted); *see also Frappied*, 966 F.3d at 1058 (holding that "violations of company policy," "attendance issues," and "performance mistakes" can be legitimate justifications for employee discipline).

Ms. Saunders fails to meet her burden on the pretext prong. She points to no evidence demonstrating that Safeway's reasons are "factually false," *DePaula*, 859 F.3d at 970, and she has not come forward with competent evidence "revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Id.* No "reasonable factfinder could rationally find [Safeway's reasons] unworthy of credence and hence infer that [it] did not act for the asserted non-discriminatory reasons." *See Jaramillo v. Colorado Jud. Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). "In the absence of such evidence, there is no issue of pretext for a jury to resolve." *Soriano v. Sealy Mattress Mfg. Co. LLC.*, No. 19-cv-01349-REB-STV, 2020 WL 4352491, at *8 (D. Colo. July 29, 2020) ("Where the evidence suggests no question as to whether the employer 'honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs,' no inference of

discrimination arises." (quoting *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1307 (10th Cir. 2017))).

Safeway's undisputed facts demonstrate that, with the employee's agreement, it transferred an employee from a department where she had become a disruptive presence; gave her an opportunity to work in a department of her choosing at the same rate of pay; and did not terminate her employment until she failed to report for work for six weeks. There is no basis for the Court to "second guess the business judgment" of Safeway on these undisputed facts. *See Dewitt*, 845 F.3d at 1307. Ms. Saunders is obliged to point to competent evidence showing that these reasons were pretextual. Not only has she failed to create a genuine issue for trial, she has acknowledged the core facts on which Safeway's assessment was based.

The record fails to show a genuine dispute of material fact sufficient to warrant presentation of Ms. Saunders' disparate treatment claim to a jury. Safeway is entitled to summary judgment on Claim Two.

**b. Hostile Work Environment (Claim Four)**

Ms. Saunders has also failed to present evidence sufficient to allow a reasonable jury to find that she has met the "extremely high bar" necessary to establish a hostile work environment claim. *See Iweha v. State of Kansas*, 121 F.4th 1208, 1224-25 (10th Cir. 2024) (recognizing "the extremely high bar that a plaintiff typically must surpass in order to successfully make a claim that their work environment was not just uncomfortable at times, but overtly hostile in an unlawful way"). To sustain a claim for hostile work environment under Title VII, Ms. Saunders must first show that Safeway discriminated against her "because of her . . . sex." *Ford v. Jackson Nat'l Life Ins. Co.*,

45 F.4th 1202, 1227 (10th Cir. 2022) (citing *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1174 (10th Cir. 2020)). Second, Ms. Saunders "must demonstrate 'that the discrimination was sufficiently severe or pervasive such that it altered the terms or conditions of [her] employment and created an abusive working environment." *Id.* (quoting *Sanderson*, 976 F.3d at 1174); *see also Russell v. Driscoll*, 157 F.4th 1348, 1350 (10th Cir. 2025) (*Muldrow* does not affect severe or pervasive requirement for hostile work environment claims).

To establish a severe or pervasive hostile work environment, "the plaintiff must: (1) subjectively perceive 'the conduct to be severe or pervasive,' and (2) 'show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult.'" *Id.* at 1228 (quoting *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021)). Factors relevant to the severity analysis include whether the conduct is "physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (quotation omitted). The Tenth Circuit has "found conduct sufficiently severe to overcome summary judgment in only particularly threatening or humiliating circumstances." *Throupe*, 988 F.3d at 1255 (citing *Morris*, 666 F.3d at 667); *Brown v. LaFerry's LP Gas Co.*, 708 F. App'x 518, 522 (10th Cir. 2017) (unpublished) ("Most incidents found to meet [the severity] standard involve some kind of physical assault.") (citing *Morris*, 666 F.3d at 666-67)). The pervasiveness component of a hostile work environment claim focuses on the frequency of the conduct: "A few isolated incidents of discriminatory conduct and run-of-the mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces

are insufficient to support a claim for hostile work environment." *Ford*, 45 F.4th at 1228 (alterations, internal quotations, and citation omitted).

The crux of Ms. Saunders' factual support for a hostile work environment at Safeway rests on two encounters between herself and Mr. Escobar. In the first, Mr. Escobar, perceiving that Ms. Saunders had saddled him with work that he would be obliged to finish, yelled at her and twice used the degrading term "bitch." Docket No. 94 at 8, ¶ 29. The second incident occurred after Mr. Escobar learned that he had ground up expired meat that could not be sold, which prompted him to accuse Ms. Saunders of purposefully allowing him to waste his time doing so rather than telling him of the problem. *Id*. at 9, ¶¶ 40-41. Mr. Escobar yelled at Ms. Saunders and slammed a meat cart to the floor. *Id.*, ¶ 41.

As an initial matter, it is unclear that these encounters reflect sex-based harassment, as opposed to flare-ups of a long-simmering personality conflict between Ms. Saunders and Mr. Escobar. *Ford*, 45 F.4th at 1227. Regardless, this evidence is insufficient to raise a triable issue on either the severity or the pervasiveness prongs of the hostile work environment test.

On the severity prong, the two encounters do not reflect "particularly threatening or humiliating circumstances" that "rise[] to the level of severity required for a hostile work environment claim." *See Throupe*, 988 F.3d at 1255 (citing *Morris*, 666 F.3d at 667); *see also Granger v. City of Anderson Transit Sys.*, 2025 WL 3199889, at *9 (S.D. Ind. Nov. 17, 2025) (evidence showing that employee "was called or referred to as a 'bitch' twice over the course of [her] multi-year employment . . . weighs against finding that she was subjected to a hostile work environment," and concluding that these "were

isolated incidents and offhand comments that do not amount to a hostile work environment"); *Gurcak v. Ctr. for Victims*, 2024 WL 1052839, at *5 (W.D. Pa. Mar. 11, 2024) (holding that while the comment "dyke bitch" was offensive, "[i]solated incidents and offhanded comments . . . are not sufficient to sustain a hostile work environment claim").

Conduct of a significantly more degrading nature than Ms. Saunders experienced has been found not to constitute a hostile work environment as a matter of law. *See, e.g.*, *Iweha*, 121 F.4th at 1223 (comments directed toward a Black woman of Nigerian national origin, including remarks about her hair, that "Nigerian women do not go to school," that Nigerian women who "get educated are bossy," and showing her "slave trade beads," did not "rise to the level of creating a hostile work environment"); *Morris*, 666 F.3d at 666, 668 (comments to a surgical nurse, including "get your ass in gear" and "get someone in here who knows what they are doing," along with throwing bloody pericardium tissue at her, did "not make a sufficient showing of a pervasively hostile work environment"; while the conduct "was unquestionably, juvenile, unprofessional, and perhaps independently tortious, viewed in context, we cannot conclude from this record that it objectively altered the terms and conditions of Ms. Morris's employment")). Mr. Escobar's choice of words was offensive and his conduct immature, and Ms. Saunders may have endured "bruised or wounded feelings" as a consequence, but that does not "satisfy the severe or pervasive standard." Mr. Escobar's conduct is illustrative of the sort of "run-of-the mill boorish, juvenile, or annoying behavior" that does not turn a workplace into an objectively intolerable hostile work environment. *See Ford*, 45 F.4th at 1228 (citation modified).

Ms. Saunders' evidence is not comparable to that required to show an actionable, intolerable work environment. *Iweha*, 121 F.4th at 1225. The isolated comments of which she complains are objectively insufficient to support a hostile work environment claim. No rational jury could conclude that these remarks, while offensive, demonstrate the existence of a work environment so "particularly threatening or humiliating" as to overcome summary judgment. *See Throupe*, 988 F.3d at 1255.

Neither are the two instances in which Mr. Escobar yelled at Ms. Saunders sufficient to raise a triable issue on the pervasiveness prong of the hostile work environment test. *See, e.g.*, *Iweha*, 121 F.4th at 1224 (observing that "a handful of insensitive questions" and "two offensive incidents that touched on [an employee's] race and national origin" were "simply not enough" to overcome summary judgment on her hostile work environment claim); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1365-66 (10th Cir. 1997) (holding that "five separate incidents of allegedly sexually-oriented, offensive comments either directed to [the plaintiff] or made in her presence in a sixteen month period" were not sufficiently pervasive to support a hostile work environment claim). Even if the comments directed at Ms. Saunders could be construed as discriminatory, a hostile work environment claim requires "more than a few isolated incidents of prohibited conduct, such as a steady barrage of opprobrious comments" *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1410 (10th Cir. 1997). Scrutinized pursuant to these standards, Ms. Saunders' evidentiary showing is insufficient.

Perhaps appreciating the gap between her evidence and that required to establish a viable hostile work environment claim, Ms. Saunders raises the specter of Mr. Escobar's criminal history. *See* Docket No. 105 at 7, ¶ 10; Docket No. 105-5. Her

attempt is unavailing. First, Ms. Saunders did not disclose the criminal history document during discovery, *see* Docket No. 122 at 7 n.3, and the Court discerns no justification for allowing her to use it now. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness *to supply evidence on a motion*, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.") (emphasis added). But even if the Court were to overlook this defect, Ms. Saunders admits that she had no knowledge of Mr. Escobar's criminal history at the time of her interactions with him, Docket No. 105 at 7, ¶ 10 ("Unbeknownst to Plaintiff at the time"), thus negating her ability to show that this information informed her subjective perception of the severity of his conduct. *See Ford*, 45 F.4th at 1223 (to establish a severe or pervasive hostile work environment, the plaintiff must "subjectively perceive the conduct to be severe or pervasive") (citation modified). This information, even if considered, would not establish a triable issue concerning the purported existence of a hostile work environment.

Finally, Ms. Saunders fails to point to any evidence demonstrating how her allegations about standard workplace grievances—alleged pay disparity, interviewing for a position she did not get (and that did not exist and was not filled), working non-preferred shifts, and being held to a higher standard of production than a co-worker with substantially less experience—manifest a workplace "permeated with discriminatory intimidation, ridicule, and insult." *See Ford*, 45 F.4th at 1228. In the first place, Ms. Saunders has not presented evidence to substantiate these allegations, but even if she had, they would not support the conclusion that she endured "an abusive working

environment." *See Morris*, 666 F.3d at 663; *see also Williams v. FedEx Corp. Servs.,* 849 F.3d 889, 897 (10th Cir. 2017) (evidence that employee "struggled under a heavy workload, that he received no relief when he asked for help, and that he experienced mistreatment by and disciplinary action from his supervisors," while showing "adversity in the workplace," did not "create[] an atmosphere sufficient severe to qualify as being permeated with discriminatory intimidation, ridicule, and insult") (internal quotation marks and quotation omitted).

Because Ms. Saunders has failed to show a genuine issue of disputed fact that would allow a reasonable jury to conclude that she was subjected to a hostile work environment, Safeway is entitled to summary judgment on Claim Four.

**2. Equal Pay Act Claim (Claim Three)**

"To establish a prima facie case under the Equal Pay Act, a plaintiff must provide admissible evidence demonstrating that: (1) she was performing work which was substantially equal to that of the male employees she has identified considering the skills, duties, supervision, effort, and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) the male employees were paid more under the same circumstances." *Schaeffer v. JBS Carriers, Inc.*, No. 19-cv-01406-NYW, 2020 WL 7043867, at *8 (D. Colo. Dec. 1, 2020) (citing *Riser v. QEP Energy*, 776 F.3d 1191, 1200 (10th Cir. 2015)). Here, the third element is dispositive.

Ms. Saunders' Equal Pay Act claim rests on the factually-unsupported premise that there was a pay disparity between herself and Mr. Moore, the employee who allegedly was selected for the "Lead Meat Cutter" position instead of her. Docket No.

105 at 18. As previously discussed, there are no facts to support Ms. Saunders' contention. The undisputed evidence in the record shows that no meat cutter in the Montrose store earned more than Ms. Saunders; she was paid the highest hourly wage of $22.51 allowed under the CBA in 2023. Docket No. 94 at 4, ¶ 14. Her suspicion that Mr. Moore somehow assumed the "Lead Meat Cutter" role, and thus secured a wage premium,[9] has no evidentiary support. *Id.* at 5, ¶ 17. Further, the undisputed facts show that the position was never filled because it did not exist at the Montrose store. Mr. Davis explained to Ms. Saunders that he had erred in interviewing anyone for it. *Id.* at 5, 19; *see also* Docket No. 116-4 (recording taken by Saunders capturing Davis explaining that point to her). There is no evidence in the record of a pay disparity between Ms. Saunders and Mr. Moore, or Ms. Saunders and anyone else, and her unsupported allegations to the contrary do not get her past summary judgment.

In short, Ms. Saunders has presented no admissible evidence demonstrating that a male employee was paid more than she was paid for performing the same work. Given the undisputed facts, no reasonable jury could find in Ms. Saunders' favor on her Equal Pay Act pay disparity claim. Accordingly, summary judgment is granted in favor of Safeway on Claim Three.

### 3. "Hybrid" Claim Under the LMRA (Claim Five)

Ms. Saunders claims that Safeway violated the CBA by terminating her in violation of the "just cause provisions" of that agreement. Docket No. 1 at 22-23, ¶¶ 127-138; *see* Docket No. 93-1 at 56, Art. 48, § 142 ("The Employer hereby agrees

---

[9] The undisputed evidence also demonstrates that, in the hypothetical event this position had been hired, it would have been awarded to Mr. Moore under the CBA because he had more seniority. Docket No. 94 at 5, ¶ 7.

not to discriminate against any employee or discharge him because of membership in the Union and/or for upholding Union principles; and further, **no employee who falls within the bargaining unit shall be discharged without good and sufficient cause**.") (emphasis added).[10]

"Generally, an employee is only permitted to enforce their rights under a collective bargaining agreement against their employer directly—rather than through the union—if the union has breached its [duty of fair representation or "DFR"]." *Soriano v. Sealy Mattress Mfg. Co. LLC.*, 471 F. Supp. 3d 1155, 1162–63 (D. Colo. 2020), *report and recommendation adopted*, 2020 WL 5505884 (D. Colo. May 12, 2020) (citing *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1238 (10th Cir. 1998)). "Such an action—referred to as a 'hybrid claim' under Section 301 [of the LMRA, codified at 29 U.S.C. § 185]— 'combines two conceptually independent causes of action, the first against the company for breach of the contract (a standard § 301 claim) and the second against the union for breach of the duty of fair representation (a claim implied by operation of a union's status under federal law as the sole bargaining representative of the employee).'" *Id*. at 1163 (quoting *Webb*, 155 F.3d at 1238) (other citations omitted).

"To prevail on a hybrid claim, even if only asserted against the employer, a discharged employee must prove: (1) some conduct by the worker's union that breached the DFR; (2) a causal connection showing that the union's breach affected the integrity of the arbitration process; and (3) a violation of the CBA by the company." *Id.* (citing *Webb*, 155 F.3d at 1239; *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 568-71 (1976); *Buck v. CF & I Steel, L.P.*, 531 F. App'x 936, 937 (10th Cir. 2013)

---

[10] There is no section in the CBA discussing termination in terms of "just cause."

(unpublished)); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983) ("To prevail against either the company or the Union" on a hybrid § 301 fair representation claim, employees "must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.") (internal quotation marks and quotation omitted). Here, Safeway argues that it is entitled to summary judgment on Ms. Saunders' claim under the LMRA on three grounds: the claim is barred in substantial part by the six-month statute of limitations set forth in the LMRA, 29 U.S.C. § 160(b)[11]; her claim is barred because Ms. Saunders failed to exhaust her grievance remedies; and, even if these threshold deficiencies did not exist, Safeway had just cause to transfer Ms. Saunders out of the meat department and, ultimately, to terminate her after she failed to report for work for six weeks. Docket No. 94 at 22-23.

The Court agrees with Safeway that part of Ms. Saunders' claim is time-barred. It is undisputed that Ms. Saunders was terminated on September 26, 2023, and that she filed this lawsuit on March 25, 2024, *see* Docket No. 1, thus timely bringing her hybrid claim as to her termination. The Court accordingly examines whether Safeway is entitled to summary judgment on this timely aspect of plaintiff's hybrid claim.

---

[11] *See Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990) (recognizing that, in *DelCostello*, "the Supreme Court held that the six-month statute of limitations prescribed by section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b), applies to hybrid suits under section 301 which, as here, charge that an employer breached a collective bargaining agreement and that a union breached its duty of fair representation.").

### a. No Breach of the Union's Duty of Fair Representation

Safeway has not focused on the first element of a hybrid claim that requires Ms. Saunders to come forward with evidence showing that the Union breached its duty of fair representation. *See Webb*, 155 F.3d at 1239. Even so, because the Union has moved for summary judgment on the duty of fair representation claim Ms. Saunders brings directly against the Union, the Court has a full record upon which to assess whether Ms. Saunders has come forward with sufficient, competent evidence to send the breach question to a jury. *See* Docket No. 93 at 15-19. The Court therefore begins its analysis of the hybrid claim against Safeway by examining the breach element.

A Union breaches its duty of fair representation in the context of representing an employee in a grievance or arbitration procedure when it "acts in a 'discriminatory, dishonest, arbitrary, or perfunctory fashion.'" *Webb*, 155 F.3d at 1239 (quoting *Int'l Bhd. Elec. Workers v. Hechler*, 481 U.S. 851, 864 n.6 (1987)). "To be arbitrary, . . . the union's decision must fall 'so far outside the wide range of reasonableness accorded union representatives as to be irrational.'" *Buck*, 531 F. App'x at 937 (quoting *Young v. UAW Labor Emp't & Training Corp.*, 95 F.3d 992, 998 (10th Cir. 1996)). "[A] union handles a claim in a perfunctory manner by 'acting without concern or solicitude, or giving a claim only cursory attention.'" *Id.* (quoting *Webb*, 155 F.3d at 1240) (alterations omitted). Although "a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion," an individual employee does not have "an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Vaca v. Sipes*, 386 U.S. 171, 191 (1967). "Any substantive examination of a union's performance 'must be highly deferential,

recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities.'" *Lampkin v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 154 F.3d 1136, 1144 (10th Cir. 1998) (quoting *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65, 78 (1991)).

The Union has shown that Ms. Saunders has failed to come forward with evidence demonstrating that it acted in a "discriminatory, dishonest, arbitrary, or perfunctory fashion" with regard to her termination.[12] *Webb*, 155 F.3d at 1239. It is undisputed that Ms. Saunders did not report to work a single day during the last six weeks of her tenure with Safeway when she was assigned to the floral department—a position Mr. Phillips, her Union representative, sought for Ms. Saunders at her request and which she initially endorsed as a significant accomplishment on his part. Docket No. 93 at 6, ¶ 28. Ms. Saunders asserts that she meant for the GIFs in her response to convey "sarcasm," Docket 105 at 5, ¶ 50, but no reasonable jury could construe them in that way and there is no competent record evidence indicating that Mr. Phillips would reasonably have construed them that way. On August 14, when Ms. Saunders told Mr. Phillips that she had changed her mind, Mr. Phillips reminded her that she had accepted the settlement, Docket No. 93 at 6, ¶ 31, to which Ms. Saunders responded that "I conced [sic] that I verbally agreed." *Id.*, ¶ 32. Ms. Saunders, however, never reported for any of her scheduled floral department shifts, *id.* at 7, ¶ 37, leading to her

[12] In the alternative, the Union argues that Ms. Saunders' claims are barred in their entirety because she failed to exhaust her remedies by not appealing the Union's decision to drop her hostile work environment and termination grievances. Docket No. 93 at 19. At this juncture, for purposes of summary judgment only, the Court exercises its discretion to address the breach of fair representation issue and makes no finding on the merits of the exhaustion argument.

termination. Mr. Phillips nevertheless submitted a grievance on her behalf regarding her termination. *Id.*, ¶ 39.

Based on these facts, no rational jury could conclude that the Union's actions with respect to Ms. Saunders' termination were "discriminatory, dishonest, arbitrary, or perfunctory." *Webb*, 155 F.3d at 1239; *see also Alltel Florida and Communication Workers of America Local 3174*, No. 33-300-00024-03, 118 BNA LA 1771, at 3-4 (2003, Richard, Arb.) (finding "no proof of any discrimination, unfairness, or capricious and arbitrary action—in other words, no abuse of discretion," in terminating an employee who failed to show up for work for eight days: "Indeed, the only abuse established by the testimony and evidence was the grievant's abuse of the employer's trust, and of the employment relationship"); *Solae Co. and Bakery, Confectionery, Tobacco Workers and Grain Millers Internation Union*, No. 04/54830, 122 BNA LA 1782, at 3, 6 (2006, Chandler, Arb.) (finding just cause to terminate an employee who was chronically absent from work: "A Company must be able to count on its employees to show up for work at a specific time as noted in its hiring of that employee. It cannot accept chronic absenteeism.").

Ms. Saunders's termination by Safeway occurred on September 26, 2023 and took place within the six-month period encompassed by 29 U.S.C. § 160(b) of the LMRA. Her transfer from the meat department to the floral department in mid-August 2023 is outside the six-month timeframe and is therefore time-barred. However, even if the transfer issues had been timely raised, Ms. Saunders has produced no evidence that would allow a reasonable jury to conclude that the Union contravened its duty of fair representation in negotiating her lateral transfer to the floral department after Safeway

supervisory personnel determined—based on the undisputed evidence of Ms. Saunders's abusive criticism of her co-workers—that Ms. Saunders remaining in the meat department created an untenable situation.

In the face of Ms. Saunders' acknowledged behavior, no rational jury could conclude that the Union behaved in a "discriminatory, dishonest, arbitrary, or perfunctory fashion" in successfully securing her continued employment, in a department she selected, without diminution of her pay and benefits. *See Webb*, 155 F.3d at 1239. Ms. Saunders makes much of the fact that the agreement to transfer to the floral department was never committed to writing, *see* Docket No. 106 at 12, 14, 18, but she points to no law holding that grievance resolutions must be reduced to writing in order to be binding. And there is no factual information in the record demonstrating that a transfer designed to preserve Ms. Saunders' job could reasonably be construed as having been undertaken for a discriminatory or dishonest purpose or having been implemented in an arbitrary or perfunctory manner.

Ms. Saunders also fails to raise a genuine dispute regarding the Union's decision not to pursue Ms. Saunders' hostile work environment and termination grievances to arbitration—a procedure to which she has no "absolute right" in any event. *Vaca*, 386 U.S. at 191. No reasonable juror could find that Safeway did not act with "good and sufficient cause" in terminating an employee with a no-show record of six weeks' duration, thus precluding a finding of a discriminatory or dishonest purpose or arbitrary or perfunctory decisionmaking in the Union's decision to call a halt to the grievance process before it reached the arbitration stage. And insofar as Ms. Saunders may be attempting to claim a breach of the duty of fair representation based on an alleged

roadblock to completing the exhaustion process, *see* Docket 106 at 16, she also fails to create a triable issue.

Assuming that Ms. Saunders believed Mr. Phillips would treat her emailed communications as an appeal of the Union's decision to drop her grievances, *see id.*, Mr. Phillips did not understand Ms. Saunders' email and attached letter to be an appeal. Docket No. 93 at 9, ¶¶ 51-52. Ms. Saunders did not refer to her letter as an appeal and she did not use the appeal form provided to her. *Id*., ¶ 51. Any error on Mr. Phillips part in characterizing Ms. Saunders' email and letter as an appeal is "insufficient to establish a breach of the duty of fair representation," as a matter of law. *See Young*, 95 F.3d at 997 (recognizing that "[m]ere negligence, poor judgment, or ineptitude in grievance handling are insufficient to establish a breach of the duty of fair representation") (quoting *Service Employees Int'l Union, Local No. 579 v. Evans*, 229 N.L.R.B. 692, 695, 1977 WL 8661 (1977)).

A final aspect of the factual underpinning for Ms. Saunders' contention that the Union breached its duty of fair representation is Ms. Saunders' claim that the Union "didn't protect [her] from retaliation after she reported food safety violations and dangerous electrical equipment that actually shocked her" to Ms. Curtis and Ms. Counas, who were Union representatives. Docket No. 106 at 12. However, the evidence that Ms. Saunders relies upon to support her contention, the recorded phone call of August 30, 2023, Docket No. 116-7, does not show that Ms. Curtis or Ms. Counas participated. Furthermore, the Court has listened to that recording and discerns no reference by Ms. Saunders to "food safety violations" at any point. Ms. Saunders briefly mentions the "electric shock" incident, but she makes no statement suggesting that she

expected (or was entitled to) some action from the Union about that issue. The record is thus devoid of evidence that would allow a reasonable jury to find that the Union acted arbitrarily, discriminatorily, or in bad faith in responding to Ms. Saunders' alleged complaints about food safety or a workplace injury.[13]

Ms. Saunders has failed to produce evidence sufficient to create a genuine dispute of material fact that the Union acted in any manner that could rationally be characterized as "discriminatory, dishonest, arbitrary, or perfunctory," *Webb*, 155 F.3d at 1239, whether in connection with her termination or the events surrounding her removal and transfer from the meat department to the floral department in August 2023. On this record, there is no genuine dispute that Union officials, at all relevant times, acted "within the wide range of reasonableness that [the Court] must afford them," *Young*, 95 F.3d at 999, and that their decisionmaking never devolved to conduct that could reasonably characterized as "irrational." *O'Neill*, 499 U.S. at 67. Because no reasonable jury could find that the Union acted in contravention of its duty of fair representation with regard to Ms. Saunders' termination, or on any other basis, Safeway is entitled to summary judgment on Claim Five, Ms. Saunders' hybrid claim under the Labor Management Relations Act.[14]

---

[13] By the explicit terms of the CBA, a complaint about a workplace injury falls under the purview of workers' compensation law, not the bargaining agreement. *See* Docket No. 93-1 at 67, Art. 63, § 183 ("Nothing in this section shall be construed to limit or replace any rights or remedies available to employees under Workers Compensation or other applicable law or regulation. Employees shall report all injuries immediately and **complete the required reporting procedures paperwork required of them by store management**.") (emphasis added).

[14] For the same reasons, the Union is granted summary judgment on Claim One, asserting that the Union violated its duty of fair representation.

### b. No Breach of the CBA by Safeway

The absence of a genuine dispute as to the first element of a hybrid claim—that no conduct by the Union breached the duty of fair representation—disposes of the claim against Safeway. *See Webb*, 155 F.3d at 1239. Regardless, the Court finds Ms. Saunders also has failed to produce evidence sufficient to create a genuine dispute on the third element: "a violation of the [CBA] by the company." *Id.*

As detailed at length above, Ms. Saunders has failed to adduce evidence sufficient to create a factual dispute that Safeway had "good and sufficient cause" to terminate her employment under the CBA. Docket No. 93-1 at 56, Art. 48, § 142. And even if the "good and sufficient cause" standard were to be applied to the time-barred actions involving her removal from the meat department and transfer to the floral department, there is no evidence to genuinely dispute the conclusion that good cause was satisfied where Ms. Saunders' co-workers in the meat department described to Safeway her abusive and harassing conduct. Just as Ms. Saunders has failed to produce evidence demonstrating that her removal and transfer were pretextual, *see* § III.A.1.a.ii. above, she has produced no evidence sufficient to raise a genuine dispute that Safeway's business judgments comported with the CBA.

For these reasons, summary judgment is granted to Safeway on Claim Five.

### 4. State Law Violation of Public Policy Claim (Claim Six)

Having dismissed Ms. Saunders' claims against Safeway arising under federal law, the Court next addresses the issue of whether it should exercise jurisdiction over Ms. Saunders' claim that she was terminated in violation of public policy for raising complaints related to food safety and quality. Docket No. 1 at 23-24, ¶¶ 139-149.

Although the Court may exercise supplemental jurisdiction over a state law claim if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." The Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010), *abrogated on other grounds by Torres v. Madrid*, 592 U.S. 306 (2021) (brackets, citations, and internal quotation marks omitted). This rule is consistent with "[n]otions of comity and federalism," which "demand that a state court try its own lawsuits." *Id*. at 1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)); *see also Aery v. Bd. of Cnty. Comm'rs of Tulsa Cnty.*, 696 F. App'x 360, 361 (10th Cir. 2017) (unpublished) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.") (citation omitted).

Finding no compelling reason here to retain jurisdiction, the Court will dismiss Ms. Saunder's violation-of-public-policy claim against Safeway without prejudice.[15]

[15] Under Colo. Rev. Stat. § 13-80-111(1), if claims are properly commenced within the statute of limitations and involuntarily dismissed because of lack of jurisdiction, the plaintiff "may commence a new action upon the same cause of action within ninety days after the termination of the original action or within the period otherwise allowed by this article, whichever is later." *See also Artis v. D.C.*, 583 U.S. 71, 74-75 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

**B. Union's Motion**

Ms. Saunders brings a claim against the Union under § 301 of the Labor Management Relations Act alleging that she was not fairly represented by the Union in connection with her removal from the meat department and her transfer to the floral department in August 2023 and her termination from Safeway six weeks later. Docket No. 1 at 17-19, ¶¶ 89-102. For the reasons detailed above in connection with the analysis of the first prong of the § 301 claim against Safeway, the Union is entitled to summary judgment on the § 301 claim Ms. Saunders brings against it.

To briefly recapitulate that analysis, Ms. Saunders voices her disagreement with the actions undertaken by the Union—in particular, those of Mr. Phillips, the representative who negotiated her transfer from the meat department to a department in which she would have a fresh start; who communicated with her at length, on multiple occasions, answering questions and offering guidance; who filed and pursued multiple grievances on her behalf; and who warned her that she needed to appear for work in her new department, lest she be terminated. *See generally* § I.A.3.a. This record precludes Ms. Saunders from showing that her grievances were disregarded or processed in a perfunctory fashion. While hindsight may allow her to dissect and second-guess some aspects of the handling of her grievances, she fails to offer competent evidence demonstrating that the actions of Mr. Phillips, or those of any other Union official, were marked by a discriminatory or dishonest motive or lay "so far outside wide range of reasonableness accorded union representatives" as to render them irrational. *See Young*, 95 F.3d at 999. No reasonable jury could find otherwise.

Summary judgment will be granted in favor of the Union on Claim One.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Safeway's Motion for Summary Judgment [Docket No. 94] is **GRANTED**. It is further

**ORDERED** that Claims Two, Three, Four, and Five against Safeway are **DISMISSED with prejudice**. It is further

**ORDERED** that Claim Six against Safeway, for wrongful discharge in violation of public policy, is **DISMISSED without prejudice**. It is further

**ORDERED** that United Food and Commercial Workers Union, Local #7's Motion for Summary Judgment [Docket No. 93] is **GRANTED**. It is further

**ORDERED** that Claim One against United Food and Commercial Workers Union, Local #7 is **DISMISSED with prejudice**. It is further

**ORDERED** that Safeway's Motion to Strike Expert Report of Alejandro Echeverry, Ph.D. [Docket No. 96] is **DENIED as moot**. It is further

**ORDERED** that Plaintiff's Amended Response Opposing Defendant's Motion to Strike Dr. Alejandro Eceverry's Expert report [Docket No. 120], which has been incorrectly docketed as a motion, is **TERMINATED**. It is further

**ORDERED** that this case is closed.

DATED: September 18, 2026

BY THE COURT:

Philip A. Brimmer
United States District Judge